UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

AKF, INC. D/B/A FUNDKITE,

    Plaintiff,

v.                                                      Case No. 1:21-CV-00188-BKS-DJS

AVANTGARDE SENIOR LIVING
D/B/A AVANTGARDE SENIOR
LIVING OF TARZANA,
and
JASON ADELMAN,

    Defendants.

---

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION
PURSUANT TO FED. R. CIV. P. 65**

---

Shanna M. Kaminski
**KAMINSKI LAW, PLLC**
40950 Woodward Ave., Ste. 100
Bloomfield Hills, Michigan 48304
Tel. (248) 462-7111
skaminski@kaminskilawpllc.com

*Attorneys for Plaintiff, AKF, Inc. d/b/a FundKite*

1

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ……………………………………………………………3

STATEMENT OF FACTS ……………………………………………………………………….4

STANDARD OF REVIEW ……………………………………………………………………8

ARGUMENT ……………………………………………………………………………………..9

    A Preliminary Injunction Freezing Assets *Pendente Lite* May Issue
    to Ensure Complete Relief in the Final Judgment ………………………………………..9

    FundKite Will Suffer Irreparable Harm if a Preliminary Injunction
    is not Issued …………………………………………………………………………...12

    There is Strong Liklihood of Success on the Merits of FundKite's
    Claims …………………………………………………………………………………...14

CONCLUSION ……………………………………………………………………………….15

## PRELIMINARY STATEMENT

Defendant, AvantGarde Senior Living d/b/a AvantGarde Senior Living of Tarzana ("AvantGarde"), operates an assisted living facility located in Tarzana, California. Defendant, Jason Adelman, is the sole owner of AvantGarde. FundKite purchased from AvantGarde $516,000 worth of future sales, accounts, contract rights and other obligations and entitlements arising from or relating to the payment of monies from AvantGarde's customers and/or third-party payers and the proceeds thereof including, but not limited to all payments made by cash, check, electronic transfer or other form of monetary payment made to AvantGarde (hereinafter referred to as "Receipts"). The Receipts are AvantGarde's only tangible asset.

AvantGarde was to deposit the Receipts purchased by FundKite, along with all of its Receipts, into a designated bank account (the "Designated Account"). FundKite would then obtain the Receipts it purchased by debiting the Designated Account in an agreed upon amount weekly. Since January 21, 2021, FundKite has been unable to make debits from the Designated Account because a hold has been placed on the Designated Account by Mr. Adelman despite the fact that AvantGarde is continuing to operate and generate Receipts.

Recently FundKite discovered while conducting a reconciliation in accordance with the terms of the purchase agreement between FundKite and AvantGarde that in January of 2021: (i) AvantGarde transferred more than $460,000 out of the Designated Account to other bank accounts, (ii) there was a significant decline in revenue being deposited into the Designated Account, and (iii) starting January 11, 2021 items began to be returned on a daily basis due to there not being sufficient funds in the Designated Account.

FundKite also discovered that AvantGarde obtained additional funding which encumbered the Receipts purchased by FundKite and an attorney purporting to represent AvantGarde contacted counsel for FundKite just three days ago claiming that AvantGarde was a "sinking ship" and

3

alluding to it filing for bankruptcy.

Under the circumstances, a preliminary injunction enjoining Defendants, their agents, servants and employees and any person acting in concert with them from using, transferring, encumbering or otherwise dissipating the Receipts purchased by FundKite, requiring Defendants to turnover eleven percent (11%) of Receipts generated and/or obtained by AvantGarde between February 1, 2021 and the present to an escrow agent, requiring Defendants to place eleven percent (11%) of Receipts generated and/or obtained by AvantGarde with an escrow agent each week until final judgment is entered in this case or until further order of this Court, and granting Plaintiff such other and further relief as this Court deems just and proper is necessary to protect FundKite's rights in the Receipts it purchased and to prevent irreparable injury to FundKite.

## STATEMENT OF FACTS

On or about November 19, 2020, FundKite and AvantGarde entered into a Revenue Purchase Agreement (the "Agreement") under which FundKite purchased $516,000.00 of Receipts from AvantGarde.  Affidavit of Alex Shvarts ("Shvarts Affidavit"), ¶2.  On November 25, 2020, FundKite wired $391,815 to AvantGarde to purchase the Receipts in accordance with the terms of the Agreement.  Shvarts Affidavit, ¶3.

Pursuant to the Agreement, FundKite was to obtain the Receipts it purchased from AvantGarde by debiting $16,125 (the "Initial Estimated Delivery Amount") from a bank account designated by AvantGarde into which the Receipts purchased by FundKite were to be deposited (the "Designated Account") on a weekly basis.  Shvarts Affidavit, ¶4.  The Initial Estimated Delivery Amount is intended to represent the Specified Percentage, as that term is defined in the Agreement, of Receipts.  Shvarts Affidavit, ¶5.  The Initial Estimated Delivery Amount was calculated based on AvantGarde's actual Receipts prior to the date of the Agreement determined

4

by FundKite based on a review of historical data such as bank statements, accounts receivable reports, and credit card receipts provided to FundKite by AvantGarde. Shvarts Affidavit, ¶5.

The Initial Estimated Delivery Amount was subject to a reconciliation procedure set forth in Section 1.3 of the Agreement, which is an adjustment of the Initial Estimated Delivery Amount so that subsequent weekly withdrawals from the Designated Account would equal the Specified Percentage of the actual Receipts collected by AvantGarde. Shvarts Affidavit, ¶6.

On or about January 21, 2021, FundKite received notice that it could not debit the Initial Estimated Delivery Amount from the Designated Account because the Designated Account lacked sufficient funds. Shvarts Affidavit, ¶7. On that same day, FundKite's CEO, Alex Shvarts ("Mr. Shvarts"), contacted Mr. Adelman to inquire about the interruption in the delivery of Receipts. Shvarts Affidavit, ¶8. Mr. Adelman advised FundKite's CEO during the call that he had not been depositing checks for services provided by AvantGarde in the Designated Account. Shvarts Affidavit, ¶8. Mr. Adelman then assured Mr. Shvarts that there were now sufficient funds in the Designated Account to cover the Initial Estimated Delivery Amount and directed FundKite to initiate an ACH debit of the Initial Estimated Delivery Amount. Shvarts Affidavit, ¶8. FundKite initiated the ACH debit as instructed. Shvarts Affidavit, ¶8.

On January 27, 2021, FundKite received notice that the ACH debit it had initiated at Mr. Adelman's direction was returned because the Designated Account had been blocked as a result of hold being placed on the Designated Account by the bank at Mr. Adelman's request. Shvarts Affidavit, ¶9. The hold prevented FundKite from obtaining the Receipts it purchased in the manner agreed to by FundKite and AvantGarde under the Agreement. Shvarts Affidavit, ¶9.

Section 3.3 of the Agreement requires AvanteGarde to provide FundKite written notice within 24 hours of any shortage of funds in the Designated Account that will result in a failed

5

delivery of Receipts or any hold placed on the Designated Account.  Shvarts Affidavit, Exhibit 1.  Despite the fact that both circumstances existed, AvantGarde did not provide such required notice to FundKite.

In Section 2.5 of the Agreement AvantGarde agreed to not take any voluntary action that would have any adverse effect upon its obligations under the Agreement and that doing so would be a material breach of the Agreement.  Shvarts Affidavit, Exhibit 1.  Nevertheless, Mr. Adelman failed to deposit checks into the Designated Account, which caused the Designated Account to have insufficient funds to deliver the Receipts in the manner specified in the Agreement.  Shvarts Affidavit, ¶8.

Section 3.0 of the Agreement sets forth various events of default under the Agreement.  Shvarts Affidavit, Exhibit 1.  As of January 27, 2021, AvantGarde was in default under the Agreement because it violated Sections 3.3 and 2.5 of the Agreement, refused to remit the Specified Percentage of its Receipts, placed a hold on the account that prevented FundKite from successfully debiting the Designated Account and voluntarily interrupted Receipts from being deposited into the Designated Account.  *See* Shvarts Affidavit, Exhibit 1; Complaint.

On January 29, 2021, FundKite received a wire transfer from AvantGarde in the amount of $16,125 – the Initial Estimated Delivery Amount.  Shvarts Affidavit, ¶10.  Then, on February 3, 2021, Mr. Adelman instructed FundKite to debit the Initial Estimated Delivery Amount from the Designated Account on February 5, 2021.  Shvarts Affidavit, ¶11.  FundKite initiated the February 5, 2021 debit as instructed.  Shvarts Affidavit, ¶11.  On February 9, 2021, FundKite received notice that the ACH debit it had initiated at Mr. Adelman's direction was returned because the Designated Account was still on hold.  Shvarts Affidavit, ¶12.

6

On or about February 11, 2021, for the first time since the Agreement was entered into, Mr. Adelman provided evidence of AvantGarde's sales activity for the previous month for FundKite to perform a reconciliation. Shvarts Affidavit, ¶13; Affidavit of Justin Verger ("Verger Affidavit"), ¶2. FundKite performed the reconciliation, but due to the account still being on hold was unable to debit the Adjusted Delivery Amount from the Designated Account. Shvarts Affidavit, ¶13; Verger Affidavit, ¶7. FundKite requested that AvantGarde either resolve the hold on the Designated Account or designate a new account into which it would deposit its Receipts so FundKite could debt the Adjusted Delivery Amount going forward. Shvarts Affidavit, ¶14; Verger Affidavit, Exhibit 2. To date, AvantGarde has not done either. Shvarts Affidavit, ¶14.

FundKite discovered an additional breach of the Agreement while performing the reconciliation. Mr. Shvarts noticed a wire transfer into the bank account from a company that provides funding to small businesses. Shvarts Affidavit, ¶16. Therefore, it appears that AvantGarde obtained additional working capital without first obtaining FundKite's consent. Shvarts Affidavit, ¶16. Section 2.11 of the Agreement prohibits AvantGarde from entering into an arrangement, agreement, or a loan that relates to or encumbers receipts or future revenue with any party unless FundKite permits AvantGarde to do so in writing. Shvarts Affidavit, Exhibit 1.

Additionally, the activity in the Designated Account was unusual and alarming. Shvarts Affidavit, ¶17; Verger Affidavit, ¶5. There were transfers labeled "cash management transfers" out of the account that exceeded $460,000 in the aggregate, there was a significant decline in revenue being deposited into the account from the information previously provided to and reviewed by FundKite, and, starting January 11, 2021, items were being returned on a daily basis due to there not being sufficient funds in the account. Shvarts Affidavit, ¶18; Verger Affidavit, ¶¶5-6.

7

On several occasions, Mr. Adelman has represented to FundKite that AvantGarde continues to operate and generate Receipts, but not Receipts have been delivered to FundKite since January 29, 2021 and the January 2021 statement for the Designated Account that was provided for the purposes of the reconciliation shows Receipts being transferred from the account.  Shvarts Affidavit, ¶18.  To date, FundKite has not received $387,000 in Receipts that it purchased from AvantGarde.  Shvarts Affidavit, ¶19.

Prior to entering into the Agreement, FundKite engaged in significant due diligence.  The due diligence revealed that AvantGarde's only asset is the Receipts.  Shvarts Affidavit, ¶20.  It owns no other tangible property like vehicles, real estate, inventory, equipment or fixtures.  Shvarts Affidavit, ¶20.

On February 23, 2021, an attorney contacted counsel for FundKite via e-mail claiming to represent AvantGarde and, referring to AvantGarde, wrote: "This ship is going down fast and your client should be luck [sic] to get what it can now."  Declaration of Shanna M. Kaminski ("Declaration"), ¶6.  The attorney also alluded to AvantGarde filing for bankruptcy in that same e-mail.  Declaration, ¶6.

## STANDARD OF REVIEW

> In this circuit the standard for obtaining a preliminary injunction is well established. In order to obtain a preliminary injunction the movant must make an affirmative showing of (1) irreparable harm; and either (2) likelihood of success on the merits; or (3) sufficiently serious questions going to the merits to make them a fair ground for litigation and balance of hardships tipping decidedly in favor of the movant.

*New York State Bar Ass'n v. Reno*, 999 F. Supp. 710, 713-14 (N.D.N.Y. 1998) *citing Covino v. Patrissi*, 967 F.2d 73, 77 (2d Cir. 1992); *Resolution Trust Corp. v. Elman*, 949 F.2d 624, 626 (2d Cir. 1991); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979).

8

# ARGUMENT

I. **A Preliminary Injunction Freezing Assets *Pendente Lite* May Issue to Ensure Complete Relief in the Final Judgment**

Two Second Circuit cases touch on the availability of Rule 65 to freeze assets *pendente lite*. In *In re Feit & Drexler,* 760 F.2d 406 (2d Cir.1985), defendant appealed a district court's injunction ordering the defendant to turn all her property capable of delivery over to an escrow agent. *Id.* at 409–410. The Second Circuit also held that Rule 65 was an "appropriate" mechanism for prejudgment freeze of assets under certain conditions:

> [E]ven where the ultimate relief sought is money damages, federal courts have found preliminary injunctions appropriate where it has been shown that the defendants intended to frustrate any judgment on the merits by transferring its assets.... [T]his is an appropriate case for the issuance of injunctive relief to prevent [defendant] from making uncollectible any judgment the Trustee may eventually obtain against her ... without injunctive relief an eventual money judgment was likely to be ineffectual ...

*Id.* at 416.

The Second Circuit broadened the grounds for using Rule 65 to secure assets for final judgment in *Republic of Philippines v. Marcos*, 806 F.2d 344 (2d Cir. 1986). In *Republic of Philippines,* the defendants appealed a district court's imposition of an injunction preventing transfer of real property. *Id.* at 346–47. The Court held that "preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally":

> A party is not entitled preliminarily to enjoin the transfer of property that will be irrelevant to a final judgment ... However, preliminary injunctions are proper to prevent a defendant from making a judgment uncollectible, and a preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally. Here the preliminary relief sought by [plaintiff] is intended to prevent any transfer or encumbrance of the properties that would place them beyond [plaintiff's] reach or would prevent reconveyance of the properties to [plaintiff].

*Id.* at 356.

Three Supreme Court cases also raise the inference that a Rule 65 injunction freezing assets *pendente lite* may issue in order to ensure complete relief in the final judgment. The most explicit assurance that Rule 65 is available to secure assets for final judgment arises in *Deckert v. Independence Shares Corporation,* 311 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 189 (1940).

The *Deckert* plaintiffs sought an order enjoining the defendant from disposing of any assets pending a final outcome in their fraudulent misrepresentation action. Plaintiffs alleged that the defendant "is insolvent and threatened with many lawsuits, that its business is virtually at a standstill because of unfavorable publicity, that preferences to creditors are probable, and that its assets are in danger of dissipation and depletion." 311 U.S. at 285, 61 S.Ct. at 232. The Court held that:

> [T]he injunction was a reasonable measure to preserve the status quo pending final determination of the questions raised by the bill ... As already stated, there were allegations that [defendant] was insolvent and its assets in danger of dissipation or depletion. That being so, the legal remedy against [defendant] without recourse to the funds ... would be inadequate.

311 U.S. at 290, 61 S.Ct. at 234. Noting that the injunction was narrowly framed, the Court found no abuse of discretion in granting the injunction. *Id.*

*DeBeers Consol. Mines v. United States,* 325 U.S. 212, 65 S.Ct. 1130, 89 L.Ed. 1566 (1945) also implies that a Rule 65 injunction is available to secure assets for a final judgment, as long as the assets are related to the action. The *DeBeers* plaintiffs brought a Sherman Act action and sought an injunction to restrain defendants from disposing of any property. The Court first considered whether the court could freeze assets pursuant to Rule 64 and New York attachment law, but found that New York law did not permit attachment where final relief would be equitable in nature. 325 U.S. at 218, 65 S.Ct. at 1133. The Court then turned to "the general principles which govern the granting of equitable relief." 325 U.S. at 218–19, 65 S.Ct. 1133:

10

> A preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally. The injunction in question is not of this character. It is not an injunction in the cause, and it deals with a matter lying wholly outside the issues in the suit. It deals with property which in no circumstances can be dealt with in any final injunction that may be entered.

325 U.S. at 220, 65 S.Ct. at 1134. The reasoning of the *DeBeers* Court in striking down the injunction implies that where a plaintiff will recover assets as final relief, the district court would have power to "grant intermediate relief of the same character" where the assets enjoined are also "the subject of the provisions of any final decree in the cause." *Id.*

Finally, in *U.S. v. First National City Bank,* 379 U.S. 378, 85 S.Ct. 528, 13 L.Ed.2d 365 (1965), the United States sought to enjoin a bank from transferring the assets of a foreign corporation who allegedly owed United States income tax. The Court upheld the injunction:

> Once personal jurisdiction of a party is obtained, the District Court has authority to order it to "freeze" property under its control ... The temporary injunction issued by the District Court seemed to us to be eminently appropriate to prevent further dissipation of assets ... [T]here is here property which would be the "subject of the provision of any final decree in the cause." [citing *DeBeers,* 325 U.S. at 220, 65 S.Ct. at 1134]. We conclude that this temporary injunction is "a reasonable measure to preserve the status quo." [citing *Deckert,* 311 U.S. at 290, 61 S.Ct. at 234].

379 U.S. at 384–85, 85 S.Ct. at 531–32. Although the injunction in *First National* was arguably authorized by a tax lien, the Court used the much broader ground of personal jurisdiction to uphold the injunction.

*Deckert* provides the broadest grounds for a preliminary injunction freeze of assets, holding that it may issue in order to ensure the availability of final relief. *DeBeers* takes a narrower approach, requiring that the injunction issue only where the frozen assets are of the "same character" as final relief.

Based on the foregoing cases, three standards have been developed to identify the "extraordinary circumstances" under which injunctive relief is merited: (1) that the defendant may

11

be unable to satisfy a final monetary judgment; (2) that the final relief requested is equitable in nature; (3) that the frozen assets are related to the subject matter of the action.

Here, a preliminary injunction is appropriate because at least one of the extraordinary circumstances identified in the foregoing cases exist. If an injunction is not issued AvantGarde may not have any assets to satisfy a final money judgment. Based on FundKite's due diligence, it appears the Receipts are its only tangible asset that could be used to satisfy a final judgment.

There is a substantial likelihood that if the Defendants are not prohibited from using, transferring, encumbering or otherwise dissipating the Receipts during the pendency of this case that they will disappear or be further moved out the reach of FundKite. AvantGarde's banking activity demonstrates transfers of a significant amount of Receipts elsewhere just in January (an amount that is greater than the amount of Receipts purchased by FundKite) and deposits of Receipts into the bank account has significantly declined.

What's more, there is evidence that AvantGarde may be insolvent. An attorney purporting to represent AvantGarde has contacted counsel for FundKite and referred to AvantGuarde as a "sinking ship" and suggested that AvantGuarde was on the verge of filing for bankruptcy. The fact that additional funding was obtained by AvantGarde also raises solvency questions.

In sum, based on Second Circuit and Supreme Court precedent set forth herein, sufficient grounds exist to issue a preliminary injunction in this case prohibiting AvantGarde from using, transferring or dissipating the Receipts.

**II.     FundKite Will Suffer Irreparable Harm if a Preliminary Injunction is Not Issued**

As demonstrated in the previous section, the danger of dissipation of assets and making a judgment uncollactable constitutes irreparable harm. *See e.g., Deckert v. Independence Shares Corporation,* 311 U.S. 282, 290, 61 S.Ct. 229, 234, 85 L.Ed. 189 (1940) (injunction upheld where

allegations indicate defendant in danger of dissipating assets); *Republic of Philippines v. Marcos,* 806 F.2d 344, 356 (2d Cir.1986) (preliminary injunctions are proper to prevent a defendant from making a judgment uncollectable.).  *See also, e.g., Mason Tenders Dist. Council Pension Fund v. Messera*, No. 95 CIV. 9341 (RWS), 1997 WL 223077, at 8* (S.D.N.Y. May 1, 1997), *as amended* (May 7, 1997), *aff'd sub nom. Mason Tenders Dist. Council Pension Fund v. Pervale Contracting, Inc.*, 131 F.3d 131 (2d Cir. 1997).

FundKite engaged in significant due diligence prior to entering into the Agreement and through its due diligence it conducted, it determined that the only tangible asset of AvantGarde is the Receipts. It owns no vehicles, real estate, inventory, equipment or fixtures. Thus, the only means to satisfy any final judgment in this case will be through the Receipts.  There is a danger of dissipation of AvantGarde's only tangible asset.

There is already evidence of transfers of the Receipts out of the Designated Account to unknown bank accounts.  Additionally, there has been a stark decline of deposits of Receipts into the Designated Account.  Mr. Adelman has previously admitted to not depositing checks for services performed into the Designated Account.  If the Receipts are not available it appears that there likely is no means to collect any judgment that FundKite may ultimately obtain.

This would be particularly true if AvantGarde were to stop operating and generating Receipts at any time during the pendency of this litigation and the Receipts are not preserved. There is a threat of that occurring in this case.

On February 23, 2021, an attorney contacted counsel for FundKite via e-mail claiming to represent AvantGarde and, referring to AvantGarde, wrote: "This ship is going down fast and your client should be luck [sic] to get what it can now."  The attorney also alluded to AvantGarde filing

for bankruptcy in that same e-mail. This is against the backdrop of deposits of the Receipts into the account dwindling and AvantGarde obtaining additional funding.

In short, FundKite will suffer irreparable harm if the Receipts are not preserved during the pendency of this case.

### III. There is a Strong Likelihood of Success on the Merits of FundKite's Claims

This case is a simple breach of contract action. The first claim alleged in the complaint is a breach of contract claim and that claim serves as the foundation for all other claims. The elements of a breach of contract claim under New York law are: (1) the existence of an agreement between the parties, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages. *Power Up Lending Grp., Ltd. V. Cardinal Energy Grp., Inc*., 2019 US Dist. Lexis 57527 (E.D.N.Y. 2019). See also *Klein v. Frenkel*, 2017 US Dist. Lexis 194111 (E.D.N.Y. 2017), *Harsco Corp. V. Segui*, 91 F.3d 337, 348 (2d Cir. 1996).[1]

FundKite has provided evidence that there is a contract between FundKite and AvantGarde – the Agreement – and that FundKite performed under the Agreement when it paid the purchase price to AvantGarde. FundKite has also provided evidence that AvantGarde has breached the Agreement in several ways. As of January 27, 2021, AvantGarde was in default under the Agreement because it violated Sections 3.3 and 2.5 of the Agreement, refused to remit the

---

[1] Section 4.7 of the Agreement provides, in relevant part:

> **4.7 Governing Law, Venue and Jurisdiction.** This Agreement shall be governed by or constructed in accordance with the laws of the state of New York, without regard to any applicable principles of conflicts of law. Any suit, action or proceeding arising out of any disputes between the SELLER, Guarantor(s) and the BUYER its affiliates, agents, attorneys and assigns herein, or arising out of the Agreement hereunder, or the interpretation, performance or breach hereof, shall if BUYER so elects, be instituted in any court sitting in New York State (the "Acceptable Forms").

Specified Percentage of its Receipts, placed a hold on the account that prevented FundKite from successfully debiting the Designated Account, voluntarily interrupted Receipts from being deposited into the Designated Account, and obtained additional funding without FundKite's consent.

Finally, FundKite has made a showing that it has been damaged as a result of AvantGarde's breach of the Agreement. Due to the breaches, FundKite has not received $387,000 in Receipts that it purchased.

As success on the merits is almost assured in this case as demonstrated above, a preliminary injunction is appropriate.

## CONCLUSION

FundKite will suffer irreparable injury if a preliminary injunction enjoining Defendants, their agents, servants and employees and any person acting in concert with them from using, transferring, encumbering or otherwise dissipating the Receipts purchased by Plaintiff, requiring Defendants to turnover eleven percent (11%) of Receipts generated and/or obtained by Defendant, AvantGarde Senior Living d/b/a AvantGarde Senior Living of Tarzana ("AvantGarde") between February 1, 2021 and the present to an escrow agent, requiring Defendants to place eleven percent (11%) of Receipts generated and/or obtained by AvantGarde with an escrow agent each week until final judgment is entered in this case or until further order of this Court, and granting Plaintiff such other and further relief as this Court deems just and proper is not issued. The Court should grant FundKite's motion for preliminary injunction.

Dated:  February 26, 2021

        KAMINSKI LAW, PLLC

        /s/ Shanna Kaminski

_____
Shanna M. Kaminski
40950 Woodward Ave., Ste. 100
Bloomfield Hills, Michigan 48304
(248) 462-7111
skaminski@kaminskilawpllc.com


*Attorneys for Plaintiff*
*AKF, Inc. d/b/a FundKite*